IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Docket No. 2:21-cr-130 |
| TRAVIS JAMES MUCKELROY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

In anticipation of sentencing, the defense submits this memorandum setting forth its position that a sentence of 15 years in prison, followed by a lengthy term of supervised release, is the appropriate sentence. Mr. Muckelroy has reviewed the most recent Presentence Investigation Report (PSR) and has no objections to the advisory guideline range of 324 to 405 months of imprisonment. A sentence well below the correctly calculated guideline range is appropriate in this case for the reasons set forth below. Along with this memorandum, the defense is submitting a letter from Mr. Muckelroy to this Court. *See* Exh. 1.

There is no explaining away or running from what Mr. Muckelroy did. He has admitted his criminal conduct and will appear before this Court for sentencing next week. His offense is troubling and threatens to crowd out other aspects of his history and character. Hopefully, this Court sees the bigger picture. In arriving at a sentence that is sufficient but not greater than necessary, this Court needs to balance the equities of Mr. Muckelroy's crime, his history, sentences imposed in similar cases, and the realties of incarceration, especially incarceration during a pandemic and for a sex offense involving

1

a minor. There are many aspects of this case that point to Mr. Muckelroy's potential for rehabilitation and the need for a measured degree of punishment. A sentence of 15 years and a lengthy term of supervised release is appropriate; it balances the crime, Mr. Muckelroy's character, and the statutory purposes of sentencing. *See* 18 U.S.C. § 3553(a).

I. **A sentence of 15 years with a substantial term of supervised release sufficiently accounts for the nature and circumstances of the offense and is appropriate given Mr. Muckelroy's personal history and characteristics.**

It is within this Court's discretion to impose a below-guideline sentence. *See Gall v. United States*, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *see also Kimbrough v. United States*, 128 S. Ct. 570 (2007) (noting that courts may vary from Guideline ranges based solely on policy considerations, including disagreement with the Guidelines); *Rita v. United States,* 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California*, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer bound by the Guidelines, but are required to consider them along with the sentencing goals in 18 U.S.C. § 3553(a)). Time and again, the Supreme Court has reiterated that "the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S. Ct. at 577 (Scalia, J., concurring). A sentencing court "may not presume that the Guidelines range is reasonable," and instead "make an individualized assessment based on the facts presented." *Gall,* 128 S. Ct. at 597. In this case, a sentence well below the guideline range is sufficient to accomplish the purposes

of sentencing while taking into account the nature of the offense and Mr. Muckelroy's personal history and characteristics.

> A. *Though the offense is undoubtedly serious, a sentence of 15 years and a lengthy term of supervision, along with the collateral consequences of a felony conviction and especially a conviction for a sex offense, is sufficient to address Mr. Muckelroy's criminal conduct.*

With any crime, there is always a continuum of behavior. Every violation of federal law is serious, but the gradients of the behavior are what ultimately dictate the punishment. Here, as in most cases, the guidelines fail to account for the subtle gradients of the case. The offense conduct and Mr. Muckelroy's admissions relating to that conduct are set forth in detail in the Presentence Report and will not be repeated at length here. Instead, the defense will highlight certain aspects of the offense and Mr. Muckelroy's post-offense conduct that support the requested sentence.

While all sexual misconduct relating to children is bad, context makes some difference. Sadly, it is not uncommon for victims of such offenses to be experiencing an unstable personal life, prior abuse, or addiction. *See e.g., United States v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002) (noting that an unstable personal life and chemical dependency are "characteristics . . . typical among Mann Act victims…"). Further, "the typical production offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography," with 60.3 percent of individuals maintaining a position of trust over a minor victim whether through familial relationships or by virtue of a role such as a teacher or coach. *See* U.S.S.C., *Federal Sentencing of Child Pornography: Production Offenses* (Oct. 2021),

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last visited June 1, 2022) (hereinafter "USSC Report on Production Offenses"). That was not the case here where Mr. Muckelroy engaged with Jane Doe 1 and Jane Doe 2 remotely through the internet and internet-based applications. And his conduct involved victims over the age of 12. In cases involving individuals in a position of trust or who communicated with victims in person, the youngest victim in the vast majority of cases (83.5 percent) were 12 or younger, and included infants or toddlers in nearly one-third of cases (30.3 percent). *Id.* Further, Mr. Muckelroy's case is distinguishable from most other production offenses due to the applicable mandatory minimum of 10 years, as opposed to 15 years or more. *Id.* Only ten percent of individuals sentenced under § 2G2.1 were subject to the same ten-year statutory minimum while about 78 percent faced higher mandatory minimums. *Id.* The lower mandatory minimum applicable here indicates that Mr. Muckelroy's offense conduct is less serious than offense conduct in other cases involving the same guideline provision and similar ranges. None of this is meant to minimize the conduct at issue here, though, which Mr. Muckelroy acknowledges.

As he explains in his letter to this Court, Mr. Muckelroy has come to realize just how harmful and traumatic it was for him to engage in the exploitive behavior at issue here. Just the fact that he was charged with a crime has had a tremendous impact – he knows with certainly that he cannot commit this type of behavior in the future and, if he does, he'll be caught, prosecuted, and imprisoned. He is taking steps to ensure that does not happen.

4

    B. *Fifteen years in prison and a lengthy term of supervised release is an appropriate sentence given Mr. Muckelroy's history.*

Besides the nature of this offense, the Court must consider Mr. Muckelroy's personal history and characteristics. The offense took place during a dark time in his life. His step-father, who he looked up to, died of cancer in 2018. PSR ¶ 73. Mr. Muckelroy was estranged from his mother. He had joined the Navy. PSR ¶ 74. While he was stationed in Pensacola, there was an active shooter on base. PSR ¶ 75. This was traumatic for Mr. Muckelroy. *Id.* He was subsequently transferred to a ship out of Norfolk. PSR ¶¶ 76; 77. The pandemic contributed to isolation and withdrawal. During that time, Mr. Muckelroy engaged in behavior that will have lifelong consequences. He ignored his better judgement and committed a series of transgressions that represent the offense of conviction over the course of less than five months. Before this, he'd lived a successful life as a son, shipmate, and friend. He is committed to rehabilitation. *See* Exh. 1. A bad decision—even a series of bad decisions—doesn't define a person. And a sentence of 15 years is not a slap on the wrist. It is a significant sentence.

**II.  The advisory guideline range as calculated in the PSR overstates the seriousness of the offense and Mr. Muckelroy's risk of recidivism.**

While a sentence of 15 years in prison followed by supervised release amounts to a considerable variance from the advisory guideline range, it complies with § 3553(a)'s statutory mandate: "[t]he court shall impose a sentence sufficient, *but not greater than necessary,* to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a) (emphasis added). This overarching principle must guide the Court's sentencing determination, and

the applicable advisory guideline range is only one of seven factors to be considered in making the determination. *See* 18 U.S.C. § 3553(a)(1) – (7).

It is meaningful that Mr. Muckelroy agreed to plead guilty during the ongoing pandemic and did so in a timely fashion, thereby saving the Court and government resources when they have been particularly scarce, especially now as prosecutions have increased. This is an especially difficult time for everyone and Mr. Muckelroy's stress has been compounded by the instant prosecution. Still, he's wanted to resolve this case efficiently, accept his punishment, and work on moving forward. The guideline range does not take the ongoing pandemic into account.

Since his initial contact with law enforcement, and throughout these proceedings, Mr. Muckelroy has accepted responsibility for his actions and their results. He admitted his conduct when interviewed by law enforcement. He has completely accepted responsibility for his actions. *See* Exh. 1. Mr. Muckelroy respectfully requests that the Court consider this in fashioning the appropriate sentence.

A 15-year term of imprisonment is substantial and the term of supervision to follow will further reduce Mr. Muckelroy's recidivism risk. After all, supervision, and especially a lengthy term like the one Mr. Muckelroy will likely serve, is a substantial restriction of his liberty. *Gall v. United States*, 552 U.S. 38 (2007) (explaining that standard conditions of supervision "substantially restrict [defendants'] liberty"). Moreover, he will be a felon and always excluded from central pillars of American civic and social life as a result. *See United States v. Nesbeth*, 188 F. Supp. 3d 179, 180 (E.D.N.Y. 2016) (documenting the "broad range of collateral consequences that serve no function other than to further

punish criminal defendants after they have completed their court-imposed sentences" and describing how being branded as a felon is a form of "civil death" that "send[s] the unequivocal message that 'they' are no longer part of us").

Finally, he will be branded publicly as a sex offender – a status that will place him at the margins of society for the rest of his life. *See Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a [person] as a sex offender."); *see also Smith v. Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., *dissenting*) (describing the "profound humiliation and community-wide ostracism" that attends sex offender community notification). The First Circuit, in *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012), aptly noted that "[s]ometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed." The stigma of a felony conviction – and particularly a conviction for a sex offense – is more intrusive and pervasive today than ever before due to the availability of information on the internet. *See generally* Wayne A. Logan, *Informal Collateral Consequences*, 88 Washington L. Rev. 1103 (2013) ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave."). Now, Mr. Muckelroy knows in no uncertain terms what will happen if he engages in any criminal activity. He will carry the stigma and suffer the consequences of this conviction for the rest of his life.

7

**III.     A sentence of 15 years in prison with a substantial term of supervised release is sufficient but not greater than necessary to satisfy the purposes of sentencing in this case.**

      A.  *Mr. Muckelroy will be impacted by significant collateral consequences.*

Mr. Muckelroy has been and will continue to be punished, deterred from committing future crimes, and rehabilitated while serving a lengthy term of imprisonment and on supervision.

Mr. Muckelroy has already experienced at least one collateral consequence of his conviction—the loss of his career in the Navy. This and future collateral consequences of the instant conviction are significant. *See e.g.,* U.S. Dept. of Justice, Office of the Pardon Attorney, *Statutes Imposing Collateral Consequences upon Conviction* (Nov. 16, 2003), *available at* http://www.justice.gov/pardon/collateral_consequences.pdf (last visited Jan. 20, 2021).[1] Courts have considered collateral consequences, like the loss of a career, mitigating. *See e.g., United States v. Stone*, 374 F.Supp.2d 983 (D. N.M. 2005) (imposing below-guideline sentence on defendant convicted of aggravated sexual abuse, in part because defendant "suffered a lot as a result of his crime," including being terminated from his job and divorced by his wife; his sentence of incarceration "coupled with Stone's personal losses, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment"); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (affirming

---

[1] This publication describes the federal consequences of convictions on an individual's ability to vote; serve on federal jury; hold federal office, federal employment or certain federally-issued licenses; serve in armed forces; participate in federal contracts or programs; receive federal benefits; become a U.S. citizen or remain in the U.S.; and live free from registration or community notification requirements.

8

below guideline sentence for child pornography defendant based in part on fact that defendant "lost his teaching certificate and state pension as a result of his conduct. Consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'") (citing 18 U.S.C. § 3553(a)(2)(A) & (B)); *United States v. Samaras*, 390 F.Supp.2d 805 (E.D. Wis. 2005) (imposing below guideline sentence, in part, because "as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not supported by the guidelines"); *see also United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wis. 2006) (noting that "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction," which included that "he was compelled to resign as piano teacher of children and as a church musician" and that "[h[is future career as a teacher was ruined").

Moreover, Mr. Muckelroy will be subject to a registration requirement, which is a particularly oppressive collateral consequence. *See e.g., United States v. Mateo*, 299 F.Supp.2d 201 (S.D.N.Y. 2004) ("[T]here is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement…). His offense of

9

conviction carries an inescapable stigma. *See e.g., United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming on plain error review district court's finding that the collateral consequences of defendant's child pornography conviction should factor into its analysis of what constitutes "just punishment," including "the interruption of defendant's education and employment, the dissolution of his engagement, *and the stigma attached to this specific offense.*") (emphasis added).

      B.    *A sentence of 15 years and a substantial term of supervision will not create unwarranted disparity.*

According to the United States Sentencing Commission, a majority of individuals sentenced for child pornography production offenses received a variance below the applicable guideline range (57.2 percent of 512 cases). Mr. Muckelroy is asking this Court to vary downward from the applicable range.

For example, the average sentence length in Fiscal Year 2019 for an individual sentenced under U.S.S.G. § 2G2.1 who was *not* present at a victim's location was 234 months. USSC Report on Production Offenses, at 44. When present at the same location, the average sentence was 302 months. *Id.* The average sentence length for an individual sentenced under § 2G1.2 where the youngest production victim was a teenager was 232 months. *Id.* at 46. The average sentence length in cases without an enhancement under U.S.S.G. § 4B1.5 was 204 months of imprisonment. *Id.* at 50.

In *United States v. Forbes*, this Court sentenced a defendant who travelled in interstate commerce to have sex with a minor. No. 4:17cr117 (E.D. Va. July 18, 2018) (Morgan, J.). In *Forbes*, the defendant, who was in the Navy, started an online relationship

with a minor who told the defendant that she was 14 (she was really 11). No. 4:17cr117, ECF No. 17. After interacting online for some time, Forbes flew to Louisiana to meet with the minor. Forbes picked up the minor, took her to a Super 8 Motel where the two drank alcohol together, and then they engaged in oral and vaginal sex. *Id.* Following that encounter, Forbes dropped Jane Doe off outside of her middle school. *Id.* The Court sentenced Forbes to 84 months in prison. No. 4:17cr117, ECF No. 29.

In *United States v. Otto,* the court imposed a sentence of 180 months and lifetime supervised release on one count of production of child pornography. No. 3:17-cr-60, ECF No. 58 (D. Or. Apr. 11, 2019). The government described Mr. Otto's conduct in its sentencing pleading as follows:

> In 2016, over the course of several months, David Ernest Otto found, contacted, groomed, and sexually exploited half-a-dozen minor girls. At Mr. Otto's direction—and, consistent with the dominant-submissive relationships he created, on his command—the girls produced and sent Mr. Otto image after image and video after video of custom-made child pornography: Mr. Otto directed them to penetrate themselves anally and vaginally with foreign objects. And they did. Mr. Otto directed them to call him 'Daddy'. And they did. Otto directed the victims to delete the evidence of his crimes. And they did.

No. 3:17-cr-60, ECF No. 55. Of note, too, is the defendant's sentencing pleading. No. 3:17-cr-60, ECF No. 53. The defense discusses its comprehensive review of other production of child pornography cases within the District of Oregon, stating that among 44 cases involving 41 defendants, it "could not find a single case involving a violation of § 2251 that resulted in a sentence greater than 180 months where there was neither physical contact nor direct exploitation of minors in the defendant's proximity or care. Moreover,

11

even those cases that did involve actual, physical contact and 'hands-on' sex offending sometimes received a sentence at the mandatory minimum." *Id.* at 7-9.

In *United States v. William Tyson*, No. 4:16cr58 (E.D. VA. 2016), Mr. Tyson pled guilty to receipt of child pornography. He had a criminal history category of I and a total offense level of 35, producing a guideline range of 168 to 210 months of imprisonment. Mr. Tyson had a history of being sexually abused by his step-father. By his own admission, he had been viewing child pornography for approximately 15 years and used a peer-to-peer file-sharing program on his computer. Mr. Tyson utilized the KIK application to find girls who were 13 or older. While he never actually took any steps in furtherance of meeting these girls, he would ask these girls to send to him nude photographs or videos of their genitals, which they did. A forensic evaluation revealed that the images and videos were clearly of underage females and the actual amount of child pornography images was 2,439. Mr. Tyson was sentenced to 144 months of incarceration.

Recently, the Court imposed a sentence of 252 months of imprisonment in *United States v. Skinner*, No. 3:19-cr-19, ECF No. 166 (E.D. Va. 2022). Mr. Skinner pled guilty to production of child pornography. Over the course of a month, Mr. Skinner surreptitiously recorded 49 videos of a 14-year-old victim engaged in masturbation. Then, he flew from New Zealand to the United States when the victim ended their online relationship. He appeared at the victim's house and tried to enter. Police arrested him in a neighbor's yard after he was injured by the victim's mother. The government requested

a sentence of 30 years, the defense requested a sentence of 15 years, the mandatory minimum, and the Court imposed 21 years' imprisonment.

While the cases described here are not exactly the same as Mr. Muckelroy's, there are comparable factors. Because sentencing requires an assessment of the *relative* seriousness of the offense, these other cases are relevant. All the cases described above involved serious sexual misconduct with minors. *Forbes* involved hands-on sexual activity with a minor. *Otto* involved multiple minor victims and commands to engage in penetration with various objects. The defense's disparity analysis in *Otto* is particularly helpful. *Tyson* involved soliciting acts of production through KIK messenger. *Skinner* involved the surreptitious production of child pornography and a trip from New Zealand to the United States to see the victim in person. Mr. Muckelroy's requested sentence of 15 years is consistent with these and other sentences imposed in similar cases.

    C.    *A sentence of 15 years with a lengthy term of supervised release will provide deterrence and the ability for community-based rehabilitation.*

A sentence of 15 years in prison plus supervision will deter Mr. Muckelroy and others from future criminal conduct. Mr. Muckelroy was caught, prosecuted, and now faces sentencing. He knows that if he engages in the same behavior in the future, he'll be caught and will face even more time in prison. Especially for someone like Mr. Muckelroy with limited criminal history, the certainty of punishment is enough to achieve deterrence. "[T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or

increased." Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013). With respect to sex offenses, individual studies and meta-analyses consistently find that "***incarceration has little, if any, impact on recidivism***." Kevin L. Nunes, *et al.*, *Incarceration and Recidivism among Sexual Offenders*, 31 Law & Human Behavior 305, 314 (2007) (emphasis added). Indeed, not only is the evidence in support of incarceration's deterrent effect "unimpressive," the Nunes study found that, "[c]ounterintuitively, some [sex] offenders may actually experience incarceration as *less* aversive that some alternative sanctions." *Id.* at 306. Therefore, even assuming that risk of re-offense is a problem, more incarceration does nothing to solve it.

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is the one of greatest practical concern, and also the most capable of being measured. Judges should often be encouraged to impose probation or a below-guideline sentence in light of this purpose. *See, e.g., United States v. Hanson*, 561 F. Supp. 2d 1004, 1010 (E.D. Wis. 2008) (Commission sought to increase penalties for offenders who had a history of sexually exploiting or abusing minors and posed a greater risk of recidivism, but this was based on a study of offenders in 1994 and 1995, while most offenders today have no such histories); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1112 (N.D. Iowa 2009) (Bennett, J.) ("[w]here the particular defendant convicted of a child pornography offense has a low potential for recidivism, particularly where that low potential is well informed by expert evaluations and the defendant's post-arrest conduct, the defendant has no significant prior criminal history, and where the defendant appears

14

genuinely remorseful about his crimes and aware of the harm that they cause, several courts have found little need to impose a full guideline sentence to protect the public.").

Proper mental health and sex offender treatment will help eliminate any minimal risk of recidivism by addressing *why* Mr. Muckelroy committed the instant offense. This treatment is best achieved in the community, where he'll be able to continue with the same provider. "[T]treatment in the community is more effective than treatment in institutions. Although there may be obstacles to changing existing exclusionary policies; evidence demonstrates that sex offenders, both adolescent and adult, can be treated successfully in community settings." Bitna Kim et al., *Sex Offender Recidivism Revisited: Review of Recent Meta-analyses on the Effects of Sex Offender Treatment*, 17 Trauma, Violence, and Abuse 1, 11 (2016). Plus, research confirms that mental health treatment, and specifically cognitive behavioral skill-building, is more effective in reducing future criminal behavior than punishment even among persons at high-risk of reoffending. Patricia Clark, Office of Justice Programs, National Institute of Justice, *Preventing Future Crime with Cognitive Behavioral Therapy*, 265 Nat'l Instit. of Just. J 22 (2010).

The community is the best place for Mr. Muckelroy to engage in treatment; the law is clear that prison is not a means of providing treatment. *Tapia v. United States*, 564 U.S. 319 (2011); 28 U.S.C. § 994(k) ("The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment."). Especially right now, prison—specifically the Bureau of Prisons—is a very difficult and dangerous place to be.

Conditions are even harsher than usual during the pandemic, and safety in the form of isolation is prioritized over correctional treatment and rehabilitation. In this vein, courts have recognized that as prison conditions get harsher, sentences should get shorter. *See United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007) (finding merit to the argument that "the harsher the conditions, the shorter the sentence should be."). As one legal scholar recently wrote: "Crime is supposed to be antisocial; punishment should be prosocial. But American punishment has morphed into its own enemy: it has become antisocial itself."[2] Never has that been more true than today, when punishment in federal prison now includes the high probability of contracting a deadly disease, suffering in "quarantine" or solitary confinement, having limited contact with family and friends, and restricted access to rehabilitative programming that is supposed to be one of the purposes of sentencing mandated by statute.

For example, in granting compassionate release to a man convicted of sexually assaulting his partner's daughter, the court found:

> [T]he factor relating to 'the need for just punishment' has dramatically shifted since sentencing. The lockdown measures in prisons across the country like [Butner Low FCI] have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing. . . This factor has much greater weight when balancing it with the other factors and when considering how much of his sentence [the defendant] has served.

---

[2] Joshua Kleinfeld, *Two Cultures of Punishment*, 68 Stan. L. Rev. 933, 1036 (2016).

*United States v. Indarte*, 2020 WL 6060299, at *4 (W.D. Wash. Oct. 14, 2020); *United States v. Armstrong*, 2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020) ("[T]he Court is aware that defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations because their time in custody is harsher. . . Therefore, the Court finds reducing [the defendant's] sentence would also avoid unwarranted disparities between similarly situated defendants."). In this case, a sentence of 15 years in prison with supervised release to follow will incapacitate Mr. Muckelroy *and* allow for community-based rehabilitation.

## CONCLUSION

Mr. Muckelroy respectfully requests that this Court impose a sentence of 15 years in prison to be followed by a substantial term of supervised release. A 15-year term of imprisonment will satisfy the factors as set forth in 18 U.S.C. § 3553(a), providing for a sentence that is sufficient, but not greater than necessary.

        Respectfully submitted,

        TRAVIS JAMES MUCKELROY

By:       /s/
      Keith Loren Kimball
      Virginia State Bar No. 31046
      Supervisory Assistant Federal Public Defender
      Attorney for Travis James Muckelroy
      Office of the Federal Public Defender
      150 Boush Street, Suite 403
      Norfolk, Virginia 23510
      Telephone: (757) 457-0870
      Telefax: (757) 457-0880
      Email: keith_kimball@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2022, I filed this pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

I further certify that I have sent a copy of this pleading, via electronic mail, to:

Shannon Gerard
United States Probation Officer
Email: Shannon_Gerard@vaep.uscourts.gov

                                              _____/s/_____
                                              Keith Loren Kimball
                                              Virginia State Bar No. 31046
                                              Supervisory Assistant Federal Public Defender
                                              Attorney for Travis James Muckelroy
                                              Office of the Federal Public Defender
                                              150 Boush Street, Suite 403
                                              Norfolk, Virginia 23510
                                              Telephone: (757) 457-0870
                                              Telefax: (757) 457-0880
                                              Email: keith_kimball@fd.org